[Civ. No. 15837. Third Dist. Feb. 21, 1979.]

KATHIE BONNET KERLIN, Plaintiff and Appellant, v.
BOARD OF ADMINISTRATION OF THE PUBLIC EMPLOYEES'
RETIREMENT SYSTEM et al., Defendants and Respondents.

**COUNSEL**

Coben, Cooper & Zilaff and Melvyn J. Coben for Plaintiff and Appellant.

Evelle J. Younger, Attorney General, and William J. Power, Deputy Attorney General, for Defendants and Respondents.

## OPINION

**REYNOSO, J.**—By an action for declaratory relief plaintiff Kathie (Bonnet) Kerlin seeks a declaration that Government Code section 21205 is unconstitutional. She thereby seeks to collect death benefits from the Public Employees Retirement System (PERS) as the named beneficiary of her former husband, Charles K. Bonnet.

Plaintiff challenges a substantive and a procedural ruling of the trial court.[1] In its substantive ruling the trial court held that the provisions of Government Code section 21205, dealing with beneficiaries of a deceased state employee, are constitutional. Thus, plaintiff's claims against the Public Employees' Retirement System failed. By its procedural ruling that the parties had stipulated that only the constitutional challenge be decided, the trial court precluded hearing other matters.

We agree with the trial court's substantive ruling that the challenged statute is constitutional. Nor did the court err in its procedural ruling. Upon submission, other issues are deemed waived or abandoned. While the stipulations were not clear, the court offered to continue the matter. Plaintiff declined. She cannot now be heard to complain. Accordingly, we affirm.

A pretrial stipulation, the transcript of the trial which lasted but a few minutes, and the clerk's transcript, provide the record upon which the following recitation of facts is based:

Plaintiff (Kathie) and Charles K. Bonnet (Charles) were married in 1962. They were divorced in 1968, with the final decree being filed the year after. Two children were born of the marriage.

Charles, who was employed as a fireman by the City of Woodland, became a member of PERS in May 1966. At that time he designated plaintiff, his then wife, as beneficiary. Charles remained a member of

---

[1] We believe that plaintiff's challenge, while posed in various legal configurations, narrows to these two issues discussed in the text.

PERS until his death on January 17, 1973. He never changed his designated beneficiary.

At the time of the interlocutory decree Charles was credited with employee deposits with PERS totaling $794.81.

Thereafter, plaintiff remarried. Charles, too, remarried. The record is silent as to the dates of these marriages. On January 17, 1973, Charles was killed by his second wife, Marsha. She pled no contest to a charge of involuntary manslaughter and was granted probation. No additional details are found in the record regarding the killing, its causes, the plea, or the court's disposition.

In 1970, well after the dissolution of plaintiff's marriage to Charles, the Legislature added section 21205 to the Government Code. We deal with the statute below.

Six and one-half months after Charles' death on August 15, 1973, Marsha was paid $10,000 as death benefits by PERS. PERS considered Marsha the statutory beneficiary pursuant to Government Code section 21205. Kathie, the named beneficiary, applied for death benefits. PERS refused to pay her.

1.   *Constitutionality of Government Code Section 21205*

The legislative scheme promulgated by section 21205 is that the employee may designate a beneficiary, that the designation may be changed at any time, and that "a member's marriage, dissolution of marriage, annulment of his marriage, the birth of his child, or his adoption of a child shall constitute an *automatic revocation* of his previous revocable designation of beneficiary." (Italics added.) However, "[u]pon revocation of any beneficiary designation, a member may designate the same or another beneficiary by a writing filed with the board."

If there is no new designation after the automatic revocation, Government Code section 21211 sets forth the survivors to whom the benefits will be paid "in the following order:

"1. The member's spouse

"2. His children

"3. His parents"

The principal challenge to Government Code section 21211[2] is based on the contract clause of the Fifth Amendment of the United States Constitution. Plaintiff, the argument goes, enjoyed a vested contractual right in her former husband's PERS death benefits inasmuch as she was the named beneficiary. A secondary argument rests on the due process clause of the Fourteenth Amendment. During plaintiff's marriage to Charles, payments to the PERS system were community property (a stipulated amount of $794.81 at the time of dissolution). Such property, plaintiff asserts, may not be taken from her.

We reject the constitutional arguments. ■ Government Code section 21205 does not impermissibly infringe upon the constitutional right of contract. We find persuasive the court's analysis in *Ruster* v. *Ruster* (1974) 40 Cal.App.3d 379 [114 Cal.Rptr. 812]. Plaintiff at best alleges that she is the third party beneficiary to the contract between Charles and PERS. We do not resolve the issue of whether she has standing to question the impairment of contractual rights. We proceed on the shaky assumption, as did the *Ruster* court, that she has standing. *Ruster* concluded: "[T]he statutory change made by the enactment of new Government Code section 21205 is constitutionally permissible. . . ." (P.

---

[2]Government Code section 21211 reads in full:
"If no beneficiary designation is in effect on the date of death, any benefit payable shall be paid to the survivors of the member in the following order:
"1. The member's spouse
"2. His children
"3. His parents
"Payment shall be to the members of the group entitled, share and share alike. No payment shall be made to persons in any group if at the date of death there are living persons in any group preceding it; provided, however, that children of a deceased child of the member shall receive, share and share alike, the share that such child would have received were he living at the date of the member's death.
"If there is no effective beneficiary designation and there are no survivors entitled to the benefit under this section the benefit shall be paid to the estate of the member.
"Payment pursuant to the board's determination in good faith upon evidence satisfactory to it of the existence, identity or other facts relating to entitlement of persons under this section shall constitute a complete discharge of and release of the system from liability for the benefit so paid." (Added by Stats. 1970, ch. 568, § 4, p. 1140.)

382.) The relationship of advantage to disadvantages is also developed in *Ruster* at page 383: "[T]he Legislature reasonably could decide to make provision for payment to those whom in ordinary circumstances the law requires an employee to support, that is, a spouse or a child; and conversely, removes from the beneficiary status upon dissolution or annulment of a marriage, a spouse or putative spouse whose rights are to be determined in the dissolution or annulment proceedings. By and large, the statute effectuates in part the general obligation of support, giving protection against failure on the part of the employee by reason of inadvertence, neglect or delay in the giving of notice. Although the statute automatically makes the change without notice by the employee, it expressly permits the member to make a change against the one made by the statute." We agree.

The concluding paragraph in this analysis by the *Ruster* court comes under particularly bitter attack by appellant (at p. 383): "[W]e must assume that the Legislature found a benefit to the employee, not only by helping him to meet an obligation which he might otherwise have overlooked, but also by comporting with what he would most likely have desired had he been attentive." Plaintiff cites the "paternalistic government's increasing degree of involvement and interference in the life of its citizens," which involves choices which a decedent might not and probably would not condone. Aside from her moral outrage, plaintiff cites *Frazier v. Tulare County Bd. of Retirement* (1974) 42 Cal.App.3d 1046 [117 Cal.Rptr. 386], in support of her constitutional contract infringement argument. *Frazier* indeed held that a county retirement plan interferred with the right of contract. However, *Frazier* differs drastically from *Ruster* and from appellant's case. The *Frazier* court underscored that its ruling on impairment of contract was based on the specific plan under consideration. That plan, unlike Government Code section 21205, did not permit the employee the option of naming a beneficiary after the automatic statutory revocation. The *Frazier* court had no quarrel with the *Ruster* analysis. We agree.

We find that the legislative changes were materially related to the theory of a pension system and its successful operation. The members of PERS received advantages as well as disadvantages. Accordingly, we find Government Code section 21205 constitutional.[3]

---

[3]We do not understand either party to argue that Government Code section 21210 dealing with the discharge of the PERS system after payment is unconstitutional. Rather, appellant claims it is not applicable; respondent disagrees.

## 2.   *Stipulation as Preventing Trial Court From Deciding Other Issues.*

The trial court correctly concluded that it could not inquire into matters other than the constitutionality of Government Code section 21205. The parties had entered into a signed stipulation of fact and law sufficient, together with the testimony at trial, to permit disposition of the constitutional arguments regarding Government Code section 21205. The Attorney General was not given proper notice of the trial. Accordingly, he objected to testimony which went beyond the constitutional issue inasmuch as he was not prepared. At the time of the hearing, an exchange occurred between the court and the two attorneys: "MR. POWER [attorney for defendant]: May I interrupt, before Mr. Coben begins. I received no notice of this, your Honor. MR. COBEN [attorney for plaintiff]: We checked the file, and apparently, there was no notice on my office's part. I apologized to Mr. Power. He was kind enough to accommodate us. THE COURT: The trial? MR. POWER: I have no objection to hearing just the constitutional issue at this time. THE COURT: I take it, that is all we are concerned with, really, the constitutional issues. . . . MR. POWER: That is what I wanted. I have no objection at all to having constitutional questions settled, right here. MR. COBEN: Why don't we handle it in that manner. There is one issue that troubles me a little. THE COURT: I just want to make it very clear, because I read through the Complaint, and that did trouble me. But I am going to put blinders on, and as far as I can, I am simply going to try the statute [*sic*] constitutionality in light of the designation, preexisting divorce and the statute."

We interpret these exchanges as follows: while the Attorney General received no notice of the trial he was prepared to have the court decide the constitutionality of Government Code section 21205; appellant agreed that the constitutionality could be settled; but whether the entire matter was submitted, or only the constitutional issue, was not clear.

■ We are convinced that in the absence of further effort on the part of plaintiff the court properly considered the matter submitted. When the court offered to continue the case, plaintiff declined. The court then explained that it would determine only constitutionality. Plaintiff did not correct the court's understanding. After the limited trial was completed, plaintiff did not notice the trial on the remaining issues. Issues not submitted are deemed abandoned. It is the plaintiff, after all, who has the duty of going forward.

Plaintiff waited until an adverse decision was entered before bringing other issues to the court's attention. The trial court declined to hear them.

Under the facts of this case, we believe the trial court was justified in concluding that the entire cause had been submitted on the constitutionality of the statute. Thus, there was no error in the court's determination that it could hear no further issues.

The judgment is affirmed.

Puglia, P. J., and Regan, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied April 19, 1979. Bird, C. J., did not participate therein.