PITTMAN, Justice,
for the Court:
Myrtle Dillon Beal, daughter of Lawrence Thurmon Dillon, deceased, filed a petition for probate of will and for grant of letters of administration and a motion for injunctive relief requesting that Marva Dillon, the deceased’s wife, be enjoined from performing any duties as Administratrix of Dillon’s estate. Myrtle also filed a motion to interplead the Public Employees’ Retirement System pursuant to Rule 22 of the Mississippi Rules of Civil Procedure alleging that there was a question regarding the beneficiaries of the deceased’s retirement funds.
The chancellor appointed Myrtle as Executrix in accordance with the terms of the deceased’s Last Will and Testament and enjoined Marva from acting in that capacity as it related to the estate. The chancellor also determined that the deceased’s children were the legal beneficiaries of the retirement funds. Feeling aggrieved, Marva Dillon filed this appeal.
I.
Lawrence Thurmon Dillon was employed by the State of Mississippi as a supervisor with the Vocational Technical and Adult Education Department. On November 10, 1983, Dillon designated his three children, Myrtle, Lawrence, Jr., and Craig, as the beneficiaries of his state retirement funds. He was divorced at the time of designation. Furthermore, in a handwritten document dated July 9, 1984, which was accepted as a holographic will, Dillon informed Myrtle to contact the Mississippi Retirement system and to divide the retirement funds and the deferment funds three ways.
In 1984, the definition of “beneficiary” was changed to the following:
“Beneficiary” shall mean any person designated to receive a retirement allowance, an annuity or other benefit as provided by Articles 1 and 3, and such designation must be in writing filed in the office of the executive secretary of the board of trustees, and no designation or change of beneficiary shall be made in any other manner; however, notwithstanding any provision of this chapter to the contrary, the lawful spouse of a member at the time of the death of a member shall be the beneficiary of such member unless the member has designated another beneficiary subsequent to the date of marriage.
1984 Laws ch. 496 § l.[1] See also Miss.Code *1300 Ann. § 25-11-103(f) (Supp.1993).[2]
Dillon married Marva on July 27, 1987. He did not designate another beneficiary subsequent to their marriage. Dillon and Marva filed a joint complaint for divorce on the ground of irreconcilable differences on July 22, 1988. The parties attached a property settlement agreement to the complaint which provided the following:
Husband and Wife hereby waives [sic], releases [sic] and relinquishes [sic] to the other any and all claims and rights that he or she may have had, may now have, or may hereafter acquire to share in any capacity or to any extent in the other’s estate upon the other’s death, whether such right is acquired by statutory allowance, distribution in intestacy, or election to take against the other’s Last Will and Testament, or any codicil or codicils thereto, under the laws of the State of Mississippi, or any other jurisdiction, now or hereafter in force. Each party shall, at the request of the other, or at the request of the other’s legal representative, take any and all steps and execute, acknowledge and deliver to the other or to his or her said representative, any and all further documents, instruments, or assurances that may be required to effectuate this waiver,
(emphasis added)
In a handwritten document dated May 30, 1989, which was accepted as a codicil to Dillon’s Last Will and Testament, Dillon informed Myrtle, a/k/a Michelle, that his insurance policies should pay proceeds as he directed. He also instructed her to go to the “State Dept. Finance Office.” He did not make any changes regarding the retirement benefits as set out in his will.
Dillon died on September 21,1989. At the time of his death, Marva was still his legal wife because no final divorce decree had been entered. There was conflicting testimony as to whether the parties had decided to reconcile during the 14 month period between filing the complaint for divorce and Dillon’s death. The parties, however, did maintain separate residences at the time of Dillon’s death.
On September 26, 1989, Marva filed a petition for appointment as administratrix and for letters of administration under the assumption that Dillon did not leave a Last Will and Testament. On that same day, a decree was entered appointing Marva as Ad-ministratrix of Dillon’s estate. On October 12,1989, Myrtle filed a petition for probate of will and for grant of letters of administration and a motion for injunctive relief. On November 21, 1989, Myrtle also filed a motion to interplead the Public Employees’ Retirement System of Mississippi alleging that she, Lawrence Dillon, Jr., and Craig Dillon were the rightful beneficiaries to Dillon’s retirement funds. In her response to the motion to interplead, Marva objected claiming that the lower court did not have jurisdiction and/or in the alternative, that she was the rightful beneficiary pursuant to § 25-11-103(f).
The chancellor determined that the handwritten document dated July 9, 1984, was Dillon’s Last Will and Testament and that the handwritten document dated May 30, 1989, was a codicil to that will. The chancellor admitted the instruments for probate and appointed Myrtle as Executrix in accordance with the terms of the instruments. The chancellor also enjoined Marva from acting as Administratrix of Dillon’s estate. Finally, the chancellor determined that Myrtle, Lawrence, Jr., and Craig were the rightful beneficiaries of Dillon’s retirement funds “as it was decedent’s clear intention by renaming his three children as beneficiaries in his Last Will and Testament and Codicil to be the only persons to receive the benefit of these retirement proceeds.”
Marva’s motion for a new trial was denied. Marva appealed the chancellor’s decision assigning the following errors:
1. WHETHER SECTION 25-ll-103(F) OF THE MISSISSIPPI CODE ANNO *1301 TATED 1972, AS AMENDED, CONTROLS AND PROTECTS A WIDOW’S ABSOLUTE RIGHT TO THE PROCEEDS OF A RETIREMENT POLICY WHERE THE DESIGNATED BENEFICIARIES, NAMED PRIOR TO THE DECEASED’S MARRIAGE, ARE PERSONS OTHER THAN THE WIDOW.
2. WHETHER A DECEDENT’S INTENT TO DISINHERIT A SPOUSE CONTROLS OVER A REMEDIAL STATUTE DESIGNED (1) TO PROTECT THAT WIDOW’S RIGHT TO PROCEEDS FROM A RETIREMENT POLICY; AND, (2) TO PROTECT THE WIDOW AGAINST CREDITOR’S CLAIMS OR AN INSOLVENT ESTATE.
3. WHETHER, IN THE ABSENCE OF AN INDEPENDENT ACTION AGAINST THE PUBLIC EMPLOYEES’ RETIREMENT SYSTEM, A TRIAL COURT HAS JURISDICTION TO INTERPLEAD RETIREMENT SYSTEM PROCEEDS INTO AN ESTATE AND OTHERWISE TREAT THE POLICY BENEFITS AS AN ASSET OF THAT ESTATE.
4. WHETHER THERE WAS SUFFICIENT EVIDENCE TO SUPPORT THE TRIAL COURT’S FINDINGS OF FACT AND CONCLUSIONS OF LAW.
II.
1. WHETHER SECTION 25-11-103(1) OF THE MISSISSIPPI CODE ANNOTATED 1972, AS AMENDED, CONTROLS AND PROTECTS A WIDOW’S ABSOLUTE RIGHT TO THE PROCEEDS OF A RETIREMENT POLICY WHERE THE DESIGNATED BENEFICIARIES, NAMED PRIOR TO THE DECEASED’S MARRIAGE, ARE PERSONS OTHER THAN THE WIDOW.
If § 25-ll-103(f) is applied as written, Marva is the beneficiary of Dillon’s retirement benefits. The question basically is whether the statute is constitutional. The constitutionality of the statute has never been raised in Mississippi. Although California has a similar statute and has dealt with the constitutional issue, its decisions are not controlling. The California decisions, however, do offer insight as to the merits of this issue.
In Frazier v. Tulare County Board of Retirement, 42 Cal.App.3d 1046, 117 Cal.Rptr. 386 (1974), a dispute arose as to who was entitled to receive the death benefits payable under the Tulare County Employees’ Retirement System as a result of Clarence We-yand’s death. Clarence married Mary We-yand in 1930. After they separated, he began living with Dorothy Frazier in 1948. Clarence and Mary were never legally divorced. Clarence was employed as a deputy sheriff of Tulare County in 1950. As a result, he also became a member of the County Employees’ Retirement System. Clarence designated Dorothy as his beneficiary referring to her as his wife even though they were never married. He lived with Dorothy until 1962 and he died in 1971. At the time of his death, Mary was still his legal wife and Dorothy was his designated beneficiary.
When Clarence designated Dorothy as his beneficiary in 1950, the controlling statute provided that the death benefit would be paid to the person “as the member nominated by written designation.” Tulare, 42 Cal.App.3d at 1048, 117 Cal.Rptr. at 387. In 1955, the statute was amended so that the death benefit would be paid to a surviving spouse rather than the designated beneficiary if the surviving spouse so elected. Mary, as the surviving spouse, elected to receive the death benefits and Dorothy filed suit.
The trial court granted summary judgment in favor of Mary and dismissed Dorothy’s action. On appeal, the California Court of Appeal addressed the constitutionality of the statute. In reversing the lower court, the Court of Appeal found that the amended statute constituted “an unreasonable impairment of a vested contractual right contrary to article I, section 10, U.S. Constitution” and the California Constitution. Tulare, 42 Cal.App.3d at 1052, 117 Cal.Rptr. at 389.
The Court of Appeal, however, specifically distinguished Tulare from the decision in Ruster v. Ruster, 40 Cal.App.3d 379, 114 *1302 Cal.Rptr. 812 (1974), which is more directly on point with the facts of the case sub judice. In Ruster, the decedent, John A. Ruster, was an employee of the State of California. On January 4, 1963, John designated in writing that his mother was to be his beneficiary. In 1970, the statute relative to the designation of beneficiaries was changed. The new statute provided the following:
A member’s marriage, dissolution of marriage, annulment of his marriage, the birth of his child, or his adoption of a child shall constitute an automatic revocation of his previous revocable designation of beneficiary. Any revocable designation of beneficiary in effect on the operative date of this section which was filed prior to the occurrence of any of the conditions specified herein shall become void and of no effect on that date. [ ¶ ] Upon revocation of any beneficiary designation, a member may designate the same or another beneficiary. by a writing filed with the board.
Ruster, 40 Cal.App.3d at 381, 114 Cal.Rptr. at 813 (alteration in original).
John married Mary Jane on September 6, 1971. He died on November 28, 1971, just two months and twenty-two days after his marriage. He never made a new written designation subsequent to his marriage. Therefore, the old designation naming his mother as beneficiary was revoked and the benefit became payable to Mary Jane. John’s mother brought suit alleging that the amended statute unconstitutionally impaired contractual rights. The trial court granted summary judgment in favor of Mary Jane. On appeal, the Court of Appeal affirmed:
Such a change is allowable provided that it bears a material relation to the theory of a pension system and its successful operation, and that changes which result in disadvantage to employees should be accompanied by comparable new advantages.... Doubtless one of the purposes ... was to provide certainty as to the identity of a beneficiary following marriage, or dissolution or annulment thereof, or the birth or adoption of a child....
[[Image here]]
But besides this, the Legislature reasonably could decide to make provision for payment to those whom in ordinary circumstances the law requires an employee to support, that is, a spouse or a child; and conversely, removes from the beneficiary status upon dissolution or annulment of a marriage, a spouse or putative spouse whose rights are to be determined in the dissolution or annulment proceedings. By and large, the statute effectuates in part the general obligation of support, giving protection against failure on the part of the employee by reason of inadvertence, neglect or delay in the giving of notice. Although the statute automatically makes the change without notice by the employee, it expressly permits the member to make a change against the one made by the statute.

Here again, we must assume that the Legislature found a benefit to the employee, not only by helping him to meet an obligation which he might otherwise have overlooked, but also by comporting with what he would most likely have desired had he been attentive.

Ruster, 40 Cal.App.3d at 382, 114 Cal.Rptr. at 814 (citations omitted) (emphasis added).
In Tulare, the Court of Appeal noted the following with respect to the Ruster decision: *1303 Tulare, 42 Cal.App.3d at 1050-51, 117 Cal.Rptr. at 389 (first emphasis added).
*1302 We venture to suggest that the important factor supporting the reasonableness of the retroactive application of the statute in Ruster was that it gave the employee the right to redesignate a beneficiary other than his spouse or child if he so desired. No such right was given to Clarence in the case before us.
... [Furthermore, ujnlike Ruster, there is nothing in the facts in the present case in which it could be concluded that Clarence’s failure to leave his death benefits to his surviving spouse was due to inadvertence on his part and that the application of [the amended statute] would comport with his intention so as to result in any advantage to him. On the contrary, the fact that Clarence specifically designated Dorothy as his beneficiary while he was still married to Mary evidences a conscious decision on his part that Mary not receive his death benefits.
*1303 Likewise, as in Ruster, § 25 — 11— 103(f) allows the employee to redesignate a beneficiary other than his spouse after marriage. It does not constitute an unreasonable impairment of an employee’s contractual right contrary to the U.S. and Mississippi constitutions because it provides protection to those whose spouse fails to redesignate due to “inadvertence” while allowing an employee to make a “conscious decision” to redesignate if he does not want his spouse to receive the death benefits. See Tulare, 42 Cal.App.3d at 1050-51, 117 Cal.Rptr. at 389.
III.
2. WHETHER A DECEDENT’S INTENT TO DISINHERIT A SPOUSE CONTROLS OYER A REMEDIAL STATUTE DESIGNED (1) TO PROTECT THAT WIDOW’S RIGHT TO PROCEEDS FROM A RETIREMENT POLICY; AND, (2) TO PROTECT THE WIDOW AGAINST CREDITOR’S CLAIMS OR AN INSOLVENT ESTATE.
The next question is whether § 25-11-103© controls to the point that it would thwart Dillon’s clear intention that his children receive his retirement benefits.

A.The Property Settlement Agreement

In his written opinion, the chancellor found that Dillon’s codicil and the property settlement agreement, both of which were executed after Dillon and Marva were married, “clearly showed that Mr. Dillon’s clear intention was to leave all of his property to his three children since he and his estranged wife had separated, had divided up all of their property, and had agreed to live separate and apart for the rest of their lives.” According to the property settlement agreement, Marva relinquished any right she had to Dillon’s estate.
It is irrelevant whether the property settlement agreement is enforceable because § 25-11-103© does not provide that a beneficiary can be named in such a manner. Furthermore, the property settlement agreement does not mention anything about retirement benefits. It only refers to Dillon’s estate. Retirement benefits only pass through someone’s estate if there is no designated beneficiary. According to § 25-11-103©, the only way Dillon could not have a designated beneficiary would be if he never married and never formally filed a written designation with the board of trustees.

B.The Will and Codicil

It is clear from his Last Will and Testament dated July 9, 1984, Dillon intended for his three children to divide his retirement benefits equally. The codicil to his will dated May 30, 1989, did not specifically mention retirement benefits, but it also did not make any changes regarding the previous division of the retirement benefits in the will. The codicil was executed 5 months after the filing of the complaint for divorce. Once again, however, § 25-11-103© does not provide that an employee can make a designation in this fashion.

C.Dillon’s Intent v. Strict Construction

It is apparent from Dillon’s will and codicil and the property settlement agreement, if you assume that he believed that his retirement benefits were part of his estate, that he wanted his children to be the beneficiaries of his retirement benefits. Should § 25-11-103© be strictly applied under these circumstances? Two different principles of construction have developed in other states faced with this same problem:
[C]ourts employ two different principles of construction in determining whether the designation of a beneficiary or a change in such designation is effective in the sense that it conveys upon the designated beneficiary the right to the survival benefits. Thus, under statutes and ordinances giving a public employee a right to designate the person to whom he wishes any survival benefits to be paid upon his death, some courts take a strict view of any requirement that the designation be executed and properly “on file” with the retirement system at the time of the employee’s death and, in holding that such a designation absolutely controls the disposition of the *1304 survival benefits, draw an analogy to contract law and the designation of beneficiaries under policies of life insurance. Courts following this view not only refuse to find a right superior to that of the designated beneficiary in the claim of an heir, legatee, or personal representative who relies upon evidence of the employee’s intent at the time of death, but generally find irrelevant the status or conduct of the beneficiary designated, in determining his rights to survival benefits.
Other courts, under similar statutes or ordinances giving the employee a right to designate a beneficiary for receipt of survival benefits due under a public pension or retirement plan, take the view that his manifest intention at the time of death should govern disposition of his survival benefits, looking to any evidence available as to what that intent may have been. This they may find in his preparation of a request for a change of beneficiary, or in his oral or written statements, including his will.
J.F. Rydstrom, Annotation, Rights in Survival Benefits Under Public Pension or Retirement Plan as Between Designated Beneficiary and Heirs, Legatees, or Personal Representative of Deceased Employee, 5 A.L.R.3d 644, 647-48 (1966) (footnotes omitted).
In Watenpaugh v. State Teachers’ Retirement System, 51 Cal.2d 675, 336 P.2d 165 (1959), the Supreme Court of California held:
The statute should be construed to give effect to an executed designation when there is a clear manifestation of intent by the member to make the change and the designation is filed promptly after death so as to prevent any prejudice to the retirement system.
[[Image here]]
It is true that in ordinary life insurance contracts the general rule is that there must be strict compliance with the method prescribed by the policy for change of beneficiary. ... However, the provisions for death benefits under retirement systems differ in important respects from ordinary life insurance policies. For example, the retirement benefits are completely statutory in origin, membership in the retirement system is compulsory, and the requirements for change of beneficiary are not subject to negotiation. The cases dealing with ordinary life insurance contracts are therefore not controlling.
Id. at 681, 336 P.2d 165 (citations omitted).
This Court holds that § 25-11-103(0 should not be applied so as to defeat the clear intention of the deceased. Therefore, Dillon’s failure to strictly comply with the statute is irrelevant in light of his clear intent to designate his children as the beneficiaries of his retirement benefits.
IV.
The remaining issues raised by Marva on appeal are devoid of merit and do not warrant discussion. Therefore, the chancellor’s decision is affirmed on these issues.
JUDGMENT AWARDING RETIREMENT BENEFITS TO DILLON’S THREE CHILDREN, MYRTLE DILLON BEAL, LAWRENCE T. DILLON, JR. AND CRAIG DILLON, IN EQUAL SHARES, AFFIRMED.
HAWKINS, C.J., DAN M. LEE and PRATHER, P.JJ., and SULLIVAN and SMITH, JJ., concur.
PRATHER, P.J., specially concurs with separate written opinion joined by PITTMAN and SMITH, JJ.
BANKS, J., dissents with separate written opinion joined by McRAE and JAMES L. ROBERTS, Jr., JJ.

. The definition in effect at the time Dillon made his designation provided that " ‘[b]eneficiary' shall mean any person designated to receive a retirement allowance, an annuity or other benefit *1300 as provided by Articles 1 and 3.” 1980 Laws ch. 481 § 1.

. The only difference between the current definition of beneficiary and that in 1984 is that the designation is to be filed with the "executive director of the board of trustees” not the "executive secretary of the board of trustees.” See Miss.Code Ann. § 25-11-103(f) (Supp.1993).